Lewis | Baach pllc
Kaufmann Middlemiss
THE NEW YORK OFFICE OF LEWIS BAACH PLLC

June 23, 2016

**VIA ECF**

The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re**: ***WAG Acquisitions L.L.C. v. MultiMedia, LLC, et al.* (14-cv-02340);**
***WAG Acquisitions L.L.C. v. WMM LLC, et al.* (14-cv-02345);**
***WAG Acquisitions L.L.C. v. Flying Crocodile, et al.* (14-cv-02674);**
***WAG Acquisitions L.L.C. v. Gattyan Group S.a.r.l, et al.* (14-cv-02832);**
***WAG Acquisitions L.L.C. v. FriendFinder Networks Inc., et al.* (14-cv-03456);**
***WAG Acquisitions L.L.C. v. Vubeology, Inc., et al.* (14-cv-04531); and**
***WAG Acquisitions L.L.C. v. WebPower, Inc., et al.* (15-cv-03581)**
**Plaintiff's Request to Limit Number of Asserted Prior Art References**

Dear Judge Hammer:

This letter is an application by Plaintiff to require Defendants to reduce the number of prior art references prior to requiring Plaintiff to respond under Local Pat. R. 3.4A to Defendants' invalidity contentions. Defendants request full briefing and an opportunity to be heard and that the pending claim construction deadlines (Item Numbers 9–18 in the joint Discovery Plan, Dkt. No. 76) be adjourned until the Court resolves this dispute (per the [proposed] revised Discovery Plan in Ex. A).

WAG and the Defendants have met and conferred in good faith on the issue before raising it with the Court, and outline their positions below.



## Plaintiff's Position

In the conference held before Your Honor on January 22 of this year (transcript D.E. 77 in Case No. 14-cv-2340) the Defendants raised the issue of the number of patent claims Plaintiff intended to assert in these cases. (D.E. 77 at 7:3, 14:3.) Plaintiff's four asserted patents, prior to service of infringement contentions, had 64 claims in total. Despite there being no specific rule on the number of permitted patent claims, Plaintiff voluntarily reduced the number of its asserted claims in view of the issues of efficiency and prioritization raised by both Defendants and the Court. In two cases, across all four patents, Plaintiff is currently asserting 21 total claims. This is the largest number of asserted claims. Two cases, with only two patents-in-suit, assert only 9 claims.

Defendants' invalidity contentions were also discussed at the January 22 conference. The number of a Defendants' invalidity contentions, and the number of prior art references that those contentions seek to apply, is very much the "flip side" of the number of asserted patent claims. The considerations as to the number of asserted claims and the number of asserted prior art references are highly comparable. As Your Honor noted during the January 22 conference, both the number of asserted claims and the number of asserted pieces of prior art and invalidity theories "has a downstream effect that tends to prolong or expand the litigation." (D.E. 77 at 18:4-12.)

Regrettably, Defendants have failed to exercise restraint and have gone hog wild with invalidity contentions and asserted references. Here are the metrics:

| Defendant Group | Number of References | Pages of "Claim Charts" |
|---|---|---|
| Flying Crocodile and Vubeology Defendants, 14-cv-2674 and 4531 | - '011 Patent - 84 references<br>- '141 Patent - 90 references<br>- '611 Patent - 94 references<br>- '839 Patent - 95 references | 4,048 Pages |
| The Venable Group (Multi Media, Data Conversions, FriendFinder, | - '011 Patent - 36 references<br>- '141 Patent - 36 references<br>- '611 Patent - 34 references<br>- '839 Patent - 35 references | 5,377 pages |

| | | |
|---|---|---|
| Webpower), 14-cv-2340, 2345, 3456, and 15-cv-3581 | In addition, these Defendants inserted a table of **613** references and reserved the right to rely on any of them or their related family members or prosecution histories. | |
| Docler Defendants, 14-cv-2832 | - '011 Patent - 36 references<br>- '141 Patent - 39 references<br>- '611 Patent - 42 references<br>- '839 Patent - 43 references | 3,333 Pages |

In addition, in case these immense compilations may have missed anything, each Defendant incorporates the other Defendants' responses by reference, and asserts every possible combination of the listed references!

The prejudice for Plaintiff is at least two-fold:

First, these are not Defendants' actual invalidity contentions at all – they are a mass of literature from the general field that may contain buried somewhere within them Defendants' actual invalidity contentions. This blunderbuss "data dump" serves to obscure rather than disclose the actual invalidity contentions Defendants intend to pursue at trial.

The second area of prejudice lies in the fact that Local Patent Rule 3.4A requires Plaintiff to respond to these voluminous submissions point-by-point. Because Defendants' submissions are greatly excessive, this will result in an enormous waste of time and resources, given that, as a practical matter, Defendants could not effectively contest validity at trial with more than a few references per patent. By the same token, if no limits are imposed, the "downstream" effect will be to mushroom the proceedings at every subsequent stage, rather than focus the parties' contentions, as is the obvious purpose of the Local Patent Rules.

District courts have broad case-management discretion to efficiently administer their patent cases, which includes the discretion to limit the number of asserted claims and prior art references. *See, e.g.*, *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011); *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902-03 (Fed. Cir. 2011).




There are model rules and orders that have been proposed to limit the number of patent claims and conversely the number of prior art references. Typical limits on prior art are12 invalidity references per patent and 40 total per case.

The Federal Circuit Advisory Council published the attached model order on limiting claims and prior art in 2013. This order was taken down soon thereafter, because the Federal Circuit itself did not propose or specifically endorse the order, but it still serves as a useful guidepost as to what practitioners see as reasonable (12 references per patent and 40 total). Former Chief Judge Davis of the Eastern District of Texas, who was on the Advisory Council, and who administered the largest patent docket in the country, adopted a model rule for his district with the same numerical limitations on prior art, to be made 14 days after the preliminary selection of asserted claims (which occurred three months ago in this case).

Mr. Dengler argued on behalf of Defendants to this Court that "Federal Circuit precedent[,] Eastern District of Texas, Northern District of California, all adopt this notion of let's get through to what claims are actually going to be asserted. Let's do that sooner . . ." (D.E. 77 at 17:7-11.) The Court can (and should) substitute "prior art" for "claims" in Mr. Dengler's argument: Let's get through to what pieces of prior art are actually going to be asserted.

Otherwise, the exercise conducted under the Local Patent Rules will devolve into time wasting and obfuscation of defenses, rather than sharpening the issues for claim construction and trial. It is disingenuous for Defendants to argue strenuously to the Court to require Plaintiff to limit its claims, and then turn around and indiscriminately submit masses of potential defensive material without regard to reasonable limits.

Submitting over 12,000 pages of "claim charts" and 34-95 references per patent is totally excessive. The same numerical guidelines that applied to the number of claims that Plaintiff could assert should correspondingly apply to the Defendants. If, as the Court stated in January, 60 patent claims would have been greatly excessive, so too are 60, 90, or for that matter 40 invalidity references per patent. The Court should demand at least rough parity. While this District has not adopted fixed numeric limits to the number of claims or prior art references, reason




must nevertheless prevail. The Court has inherent power to impose these limits. To require Plaintiff to respond to this mass of documents – most of which will not ultimately be part of the case – would be pointless and unduly burdensome.

Plaintiff seeks an order that Defendants elect no more than 12 prior art references per patent and 40 references total (per case), and that, when they have complied with that requirement, Plaintiff will have 14 days to respond thereto in accordance with Local Pat. R. 3.4A. "Incorporation by reference" of contentions in other cases, arbitrary but unarticulated random combinations of tabular references, and like mechanisms to circumvent the specified limits should also be disallowed.

Plaintiff believes that the requested order and procedure to require Defendants to limit their asserted prior art, and then have Plaintiff respond, should not impact upcoming *Markman*-related dates. No other jurisdiction requires a response to Invalidity Contentions, and their timing should therefore not impact the *Markman* procedures, which can run in parallel. Plaintiff believes that Defendants have abused the process set forth in the local rules, and that Defendants should not be rewarded with further delay based on these tactics.

The parties are available in person or by telephone to discuss this request with the Court. Furthermore, the parties are scheduled to be before your Honor on July 15.

**Defendants' Position**

Defendants state that WAG's request: (1) contravenes the joint Discovery Plan and Scheduling Order negotiated and agreed to in January by all parties and entered by this Court; (2) cites no legal precedent for the proposition that WAG can violate the New Jersey Local Patent Rules (specifically Local Patent Rule 3.4A) at the last-minute; and (3) is premature because the above-captioned cases are far from expert discovery and dispositive motions. WAG's request also improperly attempts to shift the burden from WAG to Defendants, who have adhered to the joint Discovery Plan. In short, to the extent WAG views its present obligations as time consuming, WAG placed itself in this situation by suing 11 defendants in 7 cases in New Jersey encompassing roughly 24 claims over 4 patents.



Because of the importance of this issue to, *inter alia*, claim construction and invalidity, Defendants **request full briefing and an opportunity to be heard** and that the pending claim construction deadlines (Item Numbers 9–18 in the joint Discovery Plan, Dkt. No. 76) be adjourned until the Court resolves this dispute (per the [proposed] revised Discovery Plan in Ex. A),[1] because WAG's distinguishing of prior art will affect how the claims are construed. WAG cites no precedent to the contrary.

***Background***

WAG chose to sue ten unrelated defendant groups[2] in New Jersey beginning in March 2014 through May 2015, and unconditionally agreed to the New Jersey Local Patent Rules. The Court consolidated the above-captioned actions for discovery purposes only. Dkt. No. 45. The Court did not order or otherwise require the Defendants to consolidate their invalidity or non-infringement defenses. On January 29, 2016, **WAG unconditionally agreed in the joint Discovery Plan** to submit their responses to Defendants' invalidity contentions under Local Patent Rule 3.4A by June 23, 2016. Dkt. No. 76 at 3. This was a negotiated joint Discovery Plan, in which no party received everything it wanted, but all parties resolved to be obligated to its terms.

Pursuant to the joint Discovery Plan, WAG served infringement contentions on March 22, 2016, separately for each of the eleven defendants in the seven above-captioned cases. In total, WAG asserts 24 claims across four patents, comprising: claims 1, 5, 8, 9, 10, 14, 15, 17, 18, 19, 20, 21, 24, and 28 of the '141 Patent; claims 1 and 4 of the '011 Patent; claims 2 and 5 of the '839 Patent; and claims 1, 3, 8, 9, 14, and 15 of the '611 Patent.[3] WAG also asserts infringement of

---

[1] This includes the Court's handwritten edits to the Discovery Plan. Dkt. No. 76.

[2] One case settled after consolidation (*WAG v. MFCXY, Inc., et al.*, 14-cv-03196), and the other cases are pending jurisdictional challenges (*WAG v. GameLink, Int'l, et al.*, 15-cv-03416 and *WAG v. Sobonito Investments, Ltd., et al.*, (14-cv-01661)). These latter actions are on a separate track, and are not addressed herein.

[3] While one could question why WAG finds it appropriate to assert 11 claims in a single patent, Defendants accepted the obligations set forth in the Discovery Plan and diligently prepared their responses.

some claims twice (once for accused mobile browsers and again for accused desktop browsers), as well as against numerous accused websites without providing proper claim charts or documents supporting infringement as to each accused website.[4]

Notwithstanding that Defendants' invalidity and non-infringement contentions were due on June 9, 2016, on April 29, 2016, WAG produced approximately 1,700 pages (WAG0003449 - WAG0005178) relating to its prior litigations, *WAG v. XM Satellite Radio, Inc., Sirius Satellite Radio, Inc.,* and *Sirius XM Radio Inc.* (collectively, "Sirius"), 1:08-cv-06357 (S.D.N.Y.). Prior to that production, WAG claimed it had no documents relating to the Sirius litigation, and that it did not possess the actual prior art Sirius produced to them during that litigation. Accordingly, on April 5, 2016, the ICF Defendants and Vubeology served a subpoena duces tecum on Sirius in order to obtain the prior art produced in WAG's prior litigations.[5]

Between May 24 and June 4, 2016 – within two weeks before Defendants' invalidity contentions were due – WAG and a related entity BekTek (the purported inventor's company that WAG's counsel also represents) produced approximately 42,000 pages. May 24, 2016 (BEKTEK000001 - BEKTEK005033); May 25, 2016 (WAG0005179 - WAG0027782); May 28, 2016 (WAG0027783 - WAG0036333); and June 4, 2016 (WAG0036334 - WAG0042063).[6] On June 8, 2016, Sirius produced 3,632 pages of prior art in response to the ICF Defendants and Vubeology's subpoena.

---

[4] For instance, with respect to the ICF Defendants, WAG asserts that 23 separate websites and unnamed "affiliated" websites are infringing the Patents-in-Suit. However, WAG provides claims charts for only one of the accused websites. WAG's document production pursuant to Local Patent Rule 3.2 is similarly deficient, as WAG's production was limited to a single website operated by the ICF Defendants.

[5] Sirius delayed production of documents from the prior WAG litigations until June 8, 2016, giving Defendants an insufficient amount of time to review the substantial prior art production before their invalidity contentions were due.

[6] The productions by WAG contain an excessive number of duplicate pages, thereby further burdening Defendants.




On June 9, 2016 and per the Discovery Plan, Defendants each served invalidity (and non-infringement) contentions to WAG, as follows:

(1) MultiMedia, LLC; FriendFinder Networks Inc.; Streamray Inc.; WMM, LLC and WMM Holdings, LLC, and WebPower, Inc. ("Multimedia; FriendFinder; WMM; and WebPower Cases") served approximately 45 references total for the four patents, under 35 U.S.C. § 102 for six defendants over four separate cases.[7] WAG's table is thus misleading, because these contentions are for **six defendants over four separate cases** – not just one defendant and one case. The defendants' position in the Multimedia; FriendFinder; WMM; and WebPower Cases is even more reasonable, considering for them: WAG is still asserting 19 claims across four patents; WAG asserts the same claim twice in some cases, for mobile and desktop browsers; WAG provided one claim chart for numerous websites in violation of the Local Patent Rules, that is, WAG accused websites that they never charted; and WAG (albeit inappropriately and in violation of the Local Patent Rules) reserves the right to rely on the doctrine of equivalents without a single claim chart.

Indeed, WAG's request of 12 references per patent for each case demonstrates its failure to properly review the invalidity contentions before bringing this "application" to the Court. On June 13, 2016, WAG advised all Defendants that "[I]n our view a reasonable set of contentions would focus on no more than 12 references per patent, to which none of the Defendants' submissions come close." Ex. B. Today, WAG repeats that same arbitrary limitation of 12 references per patent per case. But for the Multimedia; FriendFinder; WMM; and WebPower Cases, WAG's own qualifier results in 48 references per patent for the four cases – a number which these defendants are below.

(2) Accretive Technology Group, Inc., ICF Technology, Inc., and Riser Apps LLC (the "ICF Defendants") offered joint invalidity contentions citing 96 references for purposes of demonstrating invalidity under either 35 U.S.C. § 102 or

[7] This is further narrowed to approximately 30-35 references for the '141 and '011 patents and a similar number for the '839 and '611 patents.

35 U.S.C. § 103.[8] The ICF Defendants maintain that their submission of 96 references is reasonable at this early stage in the litigation. Moreover, WAG's arbitrary demand of "12 references per patent" should not be adopted as it is not tethered to any basis in case law, nor is it consistent with the Discovery Plan which does not impose any limitations on the number of references that can be provided. The ICF Defendants' position is even more reasonable, considering for them: WAG is still asserting 21 claims across four patents; WAG provided one claim chart for numerous websites in violation of the Local Patent Rules, that is, WAG accused websites that they never charted; and WAG (albeit inappropriately and in violation of the Local Patent Rules) reserves the right to rely on the doctrine of equivalents without a single claim chart.

(3) Vubeology, Inc. ("Vubeology") served invalidity contentions citing 90 references on the '141 patent and 84 references on the '011 patent. WAG has not asserted that Vubeology infringed the '611 or the '839 patents. Therefore, WAG's table which groups Vubeology with the ICF Defendants is in error, as Vubeology has not served invalidity contentions on those two patents. Vubeology's references and associated claim charts were offered for demonstrating invalidity under either 35 U.S.C. § 102 or 35 U.S.C. § 103. This is a reasonable position, as Vubeology's claim charts on the '141 and '011 patents are identical to those served by the ICF Defendants, and therefore, WAG is not required to do any additional work in responding to those contentions.

(4) Gattyan Group S.a.r.l ("the Gattyan Group Defendants") served 48 references total for all four patents, under 35 U.S.C. § 102. This is entirely reasonable given the fact that WAG has asserted 21 claims across four patents against the Gattyan Group Defendants. WAG even admits, albeit arbitrarily, that this is a reasonable number of references. *See* Ex. B. Given WAG's admission, there is no basis for WAG to withhold its responses to the Gattyan Group Defendants' invalidity contentions in violation of the Discovery Plan.

---

[8] This is further narrowed to 90 references on the '141 patent; 84 references on the '011 patent; 94 references on the '611 patent; and 96 references on the '839 patent. Most of the references cited in the ICF Defendants' invalidity contentions overlap across all 4 patents. Moreover, the ICF Defendants understand that the majority of references relied upon by Defendants in the other cases are the same.




Notwithstanding that the parties jointly agreed to the joint Discovery Plan, upon receipt of Defendants' contentions, WAG now attempts to renege on that plan. WAG demanded that Defendants limit the number of prior art references, or face a motion to that effect. The Parties met and conferred on June 20, 2016, during which Defendants offered WAG an extension of time to provide its required L. Pat. R. 3.4A responses, and yet to still maintain conformance to the joint Discovery Plan, including claim construction events starting in early July. WAG declined such extension, stating that it would seek relief from the Court because **responding to individual invalidity contentions was more work than they contemplated**.

***Argument***

Pursuant to **Discovery Plan**, WAG is **required** to provide responses to each Defendants' invalidity contentions by June 23, 2016 – there are no exceptions, and Defendants' defenses are not consolidated. This schedule is the product of extensive negotiations between the parties, and WAG and the Defendants agreed to this schedule back in January. That was the time for WAG to raise any concerns regarding the timing or scope of its obligations.

WAG's request would further **violate the Local Patent Rules** – specifically L. Pat. R. 3.4A – which demand a response to the invalidity contentions. The New Jersey Local Patent Rules were a product of careful, evenhanded deliberation, and for WAG to only contest this deadline at the last minute, without any good cause or legal precedent to the contrary, shows an utter disregard for these rules.[9]

WAG's demand for reduced references also prejudices the Defendants by improperly shifting WAG's burden to the Defendants, by either having Defendants spend even more time attempting to reduce the prior art to WAG's arbitrary limitation, or conduct claim construction without complete responses to invalidity contentions. **Complete responses as envisioned under L. Pat. R. 3.4A (a-d) are necessary to enable proper claim construction review**: WAG may attempt to

---

[9] This is not the first deadline that WAG has missed. For example, WAG failed to timely serve responses to individual discovery requests properly served by the ICF Defendants, by the defendants in the Multimedia; FriendFinder; WMM; and WebPower Cases, and by the Gattyan Group Defendants .




distinguish prior art, thereby creating disclaimer of claim scope and potentially benefiting Defendants' non-infringement cases. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (distinguishing prior art results in disclaimer of claim scope); *Aylus Networks, Inc. v. Apple Inc.*, 2016 U.S. Dist. LEXIS 7299, at *14 (N.D. Cal. Jan. 21, 2016) (same). WAG fails to cite any precedent for its notion that its responses have no impact.

WAG's request is additionally premature at such an early stage in discovery and as here, well before a claim construction decision and dispositive motions. *See Krausz Indus. v. Smith-Blair, Inc.*, No. 12-570, 2016 U.S. Dist. LEXIS 52293, at *14 (E.D.N.C. Apr. 19, 2016) ("while the court is cognizant of its inherent authority to limit the number of contentions to streamline issues presented in the case, good cause has not been shown for limitations at this juncture. The court may be amenable to limiting the number of prior art references **asserted at trial or in dispositive motions**.") (emphasis added); *MyMedicalRecords, Inc. v. Walgreen Co.*, No. 13-631, 2014 U.S. Dist. LEXIS 88289, at *3 (C.D. Cal. Jun. 27, 2014) ("The Court agrees with Defendants that limitation of their asserted prior-art references would be premature at this time. The claim-construction hearing is quickly approaching and will certainly influence the parties' infringement and invalidity theories."); *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-3792, 2012 U.S. Dist. LEXIS 117370, at *5 (N.D. Cal. Aug. 20, 2012) (Grewal, M.J.) (premature to limit prior art references before "expert discovery and dispositive motion practice").

This precedent is consistent with permitting defendants to identify potential prior art documents and systems during fact discovery that might be in the hands of third-parties/plaintiff, and later amendment of invalidity contentions. The case here is no different: Defendants separately discovered 3,632 pages of Sirius prior art, and WAG belatedly produced 43,000 pages of documents shortly before the invalidity contentions were due – both of which provide good cause for later amendment of the various invalidity contentions. To force Defendants' hand now thwarts the Local Patent Rules, and transforms invalidity contentions into a mini-invalidity trial.

Further counteracting WAG's request is that **WAG chose to sue in New Jersey**, and **chose to sue** seven unrelated defendant groups on 20+ claims, across four patents against many websites without proper claim charts. WAG did so



while attempting improperly to reserve their rights on the doctrine of equivalents, again without claim charts. Having itself chosen this litigation strategy, it is thus inappropriate for WAG to be relieved of an **obligation it accepted**, and yet still require Defendants to defend against so many asserted claims (over uncharted websites) with limited invalidity options. No case law supports such an unbalanced position and indeed, WAG cites none.

WAG argues that Defendants should amend their contentions because WAG reduced its claims. But this is a ruse; WAG is still asserting 24 claims across four patents. And, it is flatly offensive for WAG to contend that "these are not Defendants' actual invalidity contentions at all." WAG's overbroad assertion of patent claims has already caused Defendants an undue expense and unreasonable burden in conducting prior art searches and preparing detailed invalidity contentions for these claims (or face potential preclusion later). This expense and burden will only be multiplied on Defendants and the Court as both will have to engage in discovery and claim construction on many needless claims. Dkt. No. 77, at 22:2–7 (WAG's attorney stating, "For every claim, there's actually three – three different variations: a method, a system, and recorded software. And they're substantiate**- -- they're substantially the same**.") (emphasis added). Thus, if the claims were "substantially the same" on January 22, 2016, WAG should not have burdened Defendants with preparing invalidity contentions in June (and with conducting discovery and claim construction) for claims WAG knows have no differences.

WAG's tenuous position gets worse in reviewing the January 22, 2016 transcript they seek to mischaracterize as authorizing limited prior art - it does not. During that hearing, the Court noted the explosive effect that numerous asserted claims can have on invalidity discovery (D.E. 77 at 18:4–12), and did not suggest in any way that prior art similarly expands the litigation. Other courts have had similar concerns and noted that reducing prior art has no efficiency gains. *See DCG Sys.*, 2012 U.S. Dist. LEXIS 117370, at *5 ("**While a reduction in the number of claims provides obvious efficiencies to decide infringement and invalidity issues, similar efficiencies are not created by reducing the number of prior art references**.") (emphasis added).

Further, despite Defendants' legitimate concerns about expensive prior art searches across 70+ claims, WAG refused to provide an early preliminary claim

construction, relying heavily on the same rules of which they now complain. Dkt. No. 77, at 16:18–17:6. The Court resolved the issue by extending the time for Defendants to respond to WAG's infringement contentions, rather than by WAG volunteering or being forced to reduce its claims earlier than required. Dkt. No. 77, at 25:24–26:3. This thus left Defendants in limbo. Yet, when Defendants correspondingly offered to extend the time for WAG's response to the invalidity contentions, WAG refused this compromise and instead hastily sought the Court's intervention.

Defendants in good faith have prepared their invalidity contentions and already reduced their contentions significantly – **from over 600 prior art references**[10] – in order to move the case forward to claim construction and a renewed § 101 motion.[11] This was notwithstanding WAG's imprecise infringement contentions, which provide scant evidence in support.[12] Defendants do not want to prolong this case any longer than needed; however, Defendants believe that WAG should not be excused from its Local Patent Rule obligations and its negotiated agreement just because it is more work than they budgeted.

For the foregoing reasons, WAG's application should be denied and WAG should be ordered to provide the responses to invalidity contentions required by the Local Patent Rules within seven days. Otherwise, Defendants respectfully request full briefing and argument on the issue as outlined previously. Under either, Defendants request that the claim construction deadlines be adjourned as outlined in Ex. A until the Court resolves the matter.

* * * * *

---

[10] The volume of such prior art references bespeaks the invalidity of WAG's patents.

[11] Defendants are not adverse to revisiting their respective invalidity contentions and prior art references, and reducing same, but only after claim construction has been decided and the issues are focused for summary judgment.

[12] The present issue, and other liability discovery disputes, demonstrate the necessity of bifurcating damages and liability discovery.




WAG and the Defendants appreciate the Court's courtesies and consideration.

Respectfully,

Ronald Abramson

cc: Counsel of Record (via ECF)